UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDIA I. CARABALLO COLON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-1414-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I. BACKGROUND

Plaintiff filed an application for SSI on October 23, 2009, alleging that she had been disabled since August 26, 2005. Administrative Record ("AR") 156-163. Her application was denied initially and upon reconsideration. *Id*. at 77-87. On June 21, 2011, a hearing was held before administrative law judge ("ALJ") Phillip E. Callis. *Id.* at 55-73. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

/////

On July 22, 2011, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 32-44. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since October 23, 2009, the application date (20 CFR 416.971 *et seq.*).

   * * *

2. The claimant has the following severe impairments: obesity, degenerative joint disease of the lumbar spine, and depression (20 CFR 416.920(c)).

   * * *

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to simple repetitive tasks in a non-public setting.

\* \* \*

5. The claimant is capable of performing past relevant work as a sorter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

\* \* \*

6. The claimant has not been under a disability, as defined in the Social Security Act, since October 23, 2009, the date the application was filed (20 CFR 416.920(f)).

*Id.* at 34-44.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 22-23, and on May 17, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-9.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

/////

3

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) rejecting the opinions of plaintiff's treating physicians; (2) failing to provide a proper rationale for discounting plaintiff's subjective complaints and credibility; and (3) failing to rely upon VE testimony tendered in response to a complete hypothetical question. ECF No. 15-1 at 19-33.

A. The ALJ Provided Specific and Legitimate Reasons for Discounting the Opinions of Plaintiff's Treating Physicians.

Plaintiff argues that the ALJ improperly discounted the assessment of treating physicians, Dr. Elvis Tanson and Dr. Adegoke Adeyemo. ECF No. 15-1 at 19-29.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion

4

(e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### 1. Elvis Tanson, M.D.

Dr. Tanson, one of plaintiff's treating physicians, completed a Physical Residual Functional Capacity ("RFC") Questionnaire indicating a diagnosis of depression, morbid obesity, and chronic lower back pain based on an MRI of plaintiff's lumbar spine that indicated severe spinal stenosis. AR at 442. Dr. Tanson opined that plaintiff could walk one to two blocks without rest; sit or stand for twenty minutes to two hours at one time; stand or walk less than two hours in an eight hour work day; needed to walk for fifteen minutes every twenty minutes in an eight hour work day; and would need fifteen minute unscheduled breaks about every thirty minutes. *Id.* at 444-445. He further opined that plaintiff could lift up to ten pounds occasionally and twenty to fifty pounds rarely; could never twist, stoop, crouch, climb ladders or stairs; and was significantly limited in repetitive reaching, handling, or fingering. *Id*. at 445-446. Dr. Tanson also opined that plaintiff's symptoms would frequently interfere with her attention and concentration, and as a result she would be incapable of performing even "low stress" jobs and would likely be absent from work about four days a month. *Id*.

Plaintiff also underwent a comprehensive internal medicine evaluation, which was completed by Dr. Georgies. *Id.* at 353-357. Dr. Georgies diagnosed plaintiff with chronic lower back pain (probable degenerative arthritis) and depression. *Id*. at 356. Upon examination, plaintiff demonstrated a reduced range of motion in her lumbar spine due to her obesity. *Id.* Plaintiff had normal strength in her upper and lower extremities, and straight leg tests were negative. *Id*. Dr. Georgies opined that plaintiff could stand or walk without limitation in an eight hour work day, could lift twenty-five pounds frequently and fifty pounds occasionally, and had no postural or manipulative limitations. *Id.* at 356-357.

1    The record also contains a Physical RFC Assessment completed by non-examining
2 physician Dr. Talcherkar. *Id*. at 365-370.  Dr. Talcherkar diagnosed plaintiff with lower back
3 pain and obesity. *Id.* at 365.  He opined that plaintiff could lift fifty pounds occasionally and
4 twenty-five pounds frequently; sit, stand, or walk (with normal breaks) for about six hours in an
5 eight hour work day; and had no postural or manipulative limitations. *Id.* at 366.
6    In assessing plaintiff's RFC, the ALJ gave little weight to Dr. Tanson's opinion.  *Id*. at 40-
7 43.  In doing so, plaintiff argues, the ALJ failed to give legally sufficient reasons for giving
8 reduced weight to Dr. Tanson's opinion.  ECF No. 15-1 at 21-26.  Because Dr. Tanson's opinion
9 was contradicted by Drs. Georgies' and Talcherkar's opinions, the ALJ was required to give
10 "specific and legitimate" reasons for rejecting his opinion. *See Orn*, 495 F.3d at 632.  The ALJ
11 gave three reasons for why he rejected Dr. Tanson's treating opinion: (1) the brief treatment
12 relationship between Dr. Tanson and the plaintiff; (2) the opinion is inconsistent with treatment
13 notes and other evidence in the record; and (3) the opinion is vague and does not offer any
14 analysis of the evidence relied upon in forming the opinion.  AR 42-43.
15    The ALJ's first reason—the duration of the treating relationship—is a proper
16 consideration in assessing what weight to accord Dr. Tanson's opinion if it is supported by the
17 record. *See* 20 C.F.R. § 416.927(c)(2)(i) (providing that the length of treatment and frequency of
18 examinations are to be considered in assess the weight of a medical opinion).  The ALJ found that
19 Dr. Tanson had only been treating plaintiff for 1-2 months based on the RFC questionnaire Dr.
20 Tanson completed.  AR 42; *see* AR 442-447.  Plaintiff argues, however, that Dr. Tanson indicated
21 on the questionnaire that he saw plaintiff once every 1-2 months, and that the ALJ misread the
22 questionnaire.  ECF No. 15-1 at 22.  According to plaintiff, the record shows that plaintiff was
23 treated at Dr. Tanson's Westlane Medical Clinic since at least November 2006.
24    In response to a question to provide the nature, frequency, and length of contact with
25 plaintiff, Dr. Tanson wrote, in handwriting not easily deciphered what appears to state: "q 1-2
26 months." AR 442.  The letter "q" is a medical abbreviation for "each" or "every," and therefore
27 plaintiff's interpretation of Dr. Tanson's response appears reasonable. *See Definition: "Q,"*
28 MediLexicon, http://www.medilexicon.com/medicaldictionary.php?t=74583 (last visited Feb. 25,

2015). However, contrary to plaintiff's contention, treatment notes from Westlane Medical Clinic do not establish that Dr. Tanson had been treating every one to two months since 2006. The records show that plaintiff was treated at the clinic since at least November 2006. AR 295-299. The clinic's records indicate that plaintiff was often seen by Dr. John Olowoyeye and Dr. Sujeeth R. Punnam. *Id.* at 511, 513, 515, 517, 519, 521, 523. Further, treatment notes do not conclusively show that Dr. Tanson treated plaintiff prior to 2011. While there are treatment notes referencing Gabriel Tanson, M.D., there is no reason to believe that Gabriel Tanson and Dr. Elvis Tanson are the same individual. Accordingly, it is difficult to determine the duration of Dr. Tanson and plaintiff's relationship.

Regardless, even assuming the ALJ was mistaken about the duration of the treating relationship, any reliance on that basis was harmless. The ALJ gave other specific and legitimate reasons for rejecting Dr. Tanson's opinion. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (the court will not reverse an ALJ's decision if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination") (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that a court may affirm an ALJ's decision "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."). The ALJ also found that Dr. Tanson's opinion was inconsistent with treatment notes and other evidence in the record showing that plaintiff was not as limited as Dr. Tanson believed. AR 42.

Treatment notes from 2007 and 2008 reflect that plaintiff regularly complained of lower back pain and pain in her legs and hands. *Id.* at 333-340. Although plaintiff occasionally demonstrated pain upon movement, physical examination was otherwise unremarkable and it was often noted that she had a full range of motion. *Id*. Medical notes from 2009, 2010, and 2011 show that plaintiff continued to complain of pain in her lower back, legs, and hands. *Id*. at 447-336. However, she was attending physical therapy, which was helpful, and it was noted that she was stable. *Id*. at 449. As noted by the ALJ, although plaintiff's treatment records evidence that

she has some physical limitations, *id*. at 40, the unremarkable findings reflected in the treatment notes are inconsistent with the extreme limitations opined by Dr. Tanson, which include the inability to twist, stoop, and crouch, as well as necessitating a 15 minute break every 30 minutes. *See id.* at 445-446. The ALJ was permitted to rely on these contradictions in discounting Dr. Tanson's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradictions between a treating physician's opinion and clinical notes are a proper basis for rejecting a treating physician's opinion).

The ALJ also rejected Dr. Tanson's opinion because it was inconsistent with plaintiff's reported daily activities. *Id*. at 42. An ALJ may reject a treating opinion that is inconsistent with other evidence in the record, including plaintiff's reported daily activities. *Morgan*, 169 F.3d at 601-602. As noted by the ALJ, the record indicates that plaintiff has the ability to "clean, shop, cook, maintain a residence, care appropriately for her grooming and hygiene, run errands, manage her medical care and treatment, and care for others." *Id*. at 35, 354, 362. Plaintiff also reported she was able to wash dishes, dust, cook, and care for her two children. *Id*. at 64-65, 225-226. Treatment notes report that in 2006 plaintiff tended to her pregnant daughter, sick son, and a daughter who had medical issues due to having previously been shot in the eye with a BB gun. *Id.* at 304, 306, 307, 312, 494. The ALJ reasonably concluded that the ability to perform these activities was not consistent with the severe limitations assessed by Dr. Tanson. *Id.* at 444, 446; *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence").

The ALJ's final reason for not fully crediting Dr. Tanson's opinion was that it was "vague and offers no analysis of the evidence relied upon in forming the opinion." *Id.* at 43. An "ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support its conclusions." *Magallanes*, 881 F.2d at 751 (internal citation and quotation marks omitted). Dr. Tanson's opinion was obtained by way of a check-the-box/short answer form, which lacked specific discussion explaining his opinion. *Id.* at 442-447.

/////

/////

1  To support the physical limitations assessed, Dr. Tanson simply wrote "see MRI report,"
2  apparently referencing an MRI taken in December 2010, without any explanation of how the MRI
3  results support the severe limitations assessed. *Id.* at 440, 442. The ALJ was allowed to consider
4  the conclusory nature of Dr. Tanson's opinion in giving it reduced weight.
5  Accordingly, the ALJ provided specific and legitimate reasons for discounting Dr.
6  Tanson's opinion.
7  2. Adegoke Adeyemo, M.D.
8  Plaintiff also contends that the ALJ erred by rejecting the opinion of her treating
9  psychiatrist, Dr. Adeyemo. ECF No. 15-1 at 26-29. In May 2011, Dr. Adeyemo completed an
10 Assessment of Ability to do Work Related Activities (Mental) form, which indicated that plaintiff
11 had been diagnosed with schizoaffective disorder. *Id.* at 526-527. Although Dr. Adeyemo
12 opined that plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the
13 public, use judgment, interact with superiors, function independently, maintain attention and
14 concentration, make performance, personal, and social adjustments; he assessed that plaintiff has
15 a poor ability to deal with work stressors; and would miss work more than three times a month
16 due to her impairments or treatment. *Id.*
17 Plaintiff also underwent a psychiatric evaluation with examining psychologist Silvia
18 Torrez, Psy.D. *Id.* at 358-364. Dr. Torrez diagnosed plaintiff with a depressive disorder (not
19 otherwise specified) and opined the plaintiff had a good ability to manage her own funds,
20 understand and remember instructions, maintain concentration and attention, and sustain an
21 ordinary routine without special supervision. *Id.* at 363-364. It was also her opinion that plaintiff
22 had a fair ability to complete a normal workday and workweek without interruption, interact with
23 coworkers, deal with various changes in a work setting, and that the likelihood of plaintiff
24 emotionally deteriorating in the work environment was minimal. *Id.*
25 The record also contains a Mental RFC Assessment form completed by Dr. Polizos, a
26 non-examining physician. *Id.* at 385-388. Dr. Polizos opined that plaintiff had moderate
27 limitations in understanding, remembering, and carrying out detailed instructions; maintaining
28 attention and concentration for extended periods of time, performing activities within a schedule,

1   and completing a normal workday or workweek without interruptions from psychological
2   symptoms.  *Id.* at 385-386.  It was also her opinion that plaintiff was moderately limited in her
3   ability to interact with the general public and adapting to changes in the work setting.  *Id*. at 386.
4       Non-examining physician L. O. Mallare also completed a Mental RFC Assessment form.
5   *Id.* at 415-417.  Dr. Mallare opined that plaintiff had moderate limitations in understanding,
6   remembering and carrying out detailed instructions; maintaining attention and concentration for
7   extended periods of time; and interacting appropriately with the general public.  *Id*. at 415-416.  It
8   was Dr. Mallare's opinion that plaintiff was capable of performing simple "1-2 step tasks with
9   adequate attendance and adaptation in a non-public work setting.  *Id*. at 417.
10      Lastly, non-examining physician Dr. Gregg reviewed plaintiff's medical records and
11  concluded that plaintiff's mental impairments were not severe.  *Id.* at 389-399.
12      The ALJ assigned minimal weight to Dr. Adeyemo's and Dr. Gregg's opinions, while
13  giving great weight to the assessments by Drs. Torrez, Polizos, and Mallare.  Because Dr.
14  Adeyemo's opinion was contradicted by Drs. Torrez, Polizos and Mallare's opinions, the ALJ
15  was required to give "specific and legitimate" reasons for rejecting Dr. Adeyemo's opinion.  *See*
16  *Orn*, 495 F.3d at 632.
17      The ALJ gave two reasons for discounting Dr. Adeyemo's opinion.  First, the ALJ noted
18  the limited relationship between plaintiff and Dr. Adeyemo.  The ALJ observed that Dr. Adeyemo
19  had only treated plaintiff on two occasions prior to preparing his assessment, i.e. December 2010
20  and March 2011.  AR 43.  Given that Dr. Adeyemo had only seen plaintiff on two occasions prior
21  to providing his opinion, the ALJ permissibly considered the duration of the relationship in
22  according less weight to Dr. Adeyemo's contradicted medical opinion.  *See* 20 C.F.R.
23  § 416.927(c)(2)(i); *see also* 20 C.F.R. § 416.927(c)(2) (explaining that the rationale for affording
24  more weight to a treating physicians is that they "are likely to be the medical professionals most
25  able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) . . . .").
26      The ALJ also discredited Dr. Adeyemo's opinion because it was "inconsistent with the
27  evidence which shows the claimant reported and demonstrated improvement in her symptoms
28  with treatment."  AR 43; *See Thacker v. Comm'r of Soc. Sec.*, No. 1:11-cv-00613-LJO-BAM,

2012 U.S. Dist. LEXIS 76478, at *32 (E.D. Cal. May 31, 2012) (finding evidence that plaintiff's medical condition was improving was a clear and convincing reason for rejecting medical opinion testimony) (citing *Morales v. Astrue*, 300 F. App'x 457, 459 (9th Cir. 2008) ("Medical improvement is a clear and convincing reason. . .")). During plaintiff's first examination with Dr. Adeyemo on December 22, 2010, plaintiff was diagnosed with a major depressive disorder with psychotic features and prescribed Prozac and Zyprexa. AR 494. After the second examination on March 11, 2011, Dr. Adeyemo took plaintiff off Prozac and prescribed Lamictal instead. *Id.* at 477. The treatment notes from San Joaquin County Behavioral Health Services on April 12, 2011 indicate that plaintiff was taking her medication as prescribed and reported improvement. *Id*. at 470. It was noted that while plaintiff was experiencing some depression symptoms, she was having more good days than bad. *Id*. On April 20, 2011, the same treatment notes indicate that plaintiff reported "doing better with the changes made to her medication regime" and not being so tired during the day. *Id*. at 468. Thus, the record shows that plaintiff's symptoms had improved from the last time she had been evaluated by Dr. Adeyemo. Accordingly, the ALJ reasonably found that Dr. Adeyemo's opinion was inconsistent with other medical evidence in the record. *See Macri*, 93 F.3d at 544 ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence").

Lastly, Dr. Torrez's opinion constitutes substantial evidence to support the ALJ's discounting in part Dr. Adeyemo's report because Dr. Torrez's opinion was based on independent clinical findings. *See Magallanes*, 881 F.2d at 751 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of the nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence."). Dr. Torrez's assessment was based on a comprehensive psychological evaluation, observations of plaintiff's appearance, attitude, behavior, and mood, and a review of treatment notes from San Joaquin Behavioral Health Services dated September 23, 2008. AR 358-364. As detailed above, Dr. Torrez's opinions contradict the opinion of Dr. Adeyemo as to plaintiff's functional limitations; therefore, it is the ALJ's duty to resolve the conflict. *See Magallanes*, 881 F.2d at 751; *Andrews*, 53 F.3d at 1041

(finding the province of resolving a conflict between contradicting medical opinions lies solely with the ALJ). Accordingly, Dr. Torrez's report is further substantial evidence supporting the ALJ's RFC determination.

The ALJ provided specific and legitimate reasons for rejecting Dr. Adeyemo's opinion. Thus, the ALJ did not err in rejecting Dr. Adeyemo's opinion.[2]

B. The ALJ Properly Rejected Plaintiff's Subjective Complaints and Credibility.

Plaintiff next argues that the ALJ erred by failing to give sufficient reasons for discrediting her subjective complaints. ECF No. 15-1 at 29-31.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of*

---

[2] Throughout plaintiff's motion for summary judgment, plaintiff is critical of the ALJ's failure to discuss each regulatory factor that must be taken into consideration when discrediting a treating physician's opinion under 20 C.F.R. § 416.927(c). *See* ECF No. 15-1 at 20-21. While the ALJ must consider the criteria outlined in 20 C.F.R. § 416.927(c), there is no requirement that his decision contain explicit findings for each factor. *See Magallanes*, 881 F.2d at 755 (an ALJ need not recite "magic words" for the decision to be valid and a reviewing court may draw inferences relevant to the ALJ's analysis "if those inferences are there to be drawn"). Indeed, the law of this circuit only requires that where the ALJ rejects an opinion from a treating source, he support that decision with either clear and convincing or specific and legitimate reasons. *Lester*, 81 F.3d at 830. As explained above, the ALJ satisfied this requirement.

1  *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

2  observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

3  substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

4  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

5  reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d

6  at 599.

7  Plaintiff testified that in a typical day she prepares a simple breakfast for herself, attempts

8  to clean, takes breaks to sit or lie down, prepares a simple lunch, and plays a game or watches

9  television with her two children and granddaughter.  AR 64-67.  She also testified that her

10 medications make her drowsy throughout the day and she does not typically leave her house.  *Id.*

11 at 65-66.  However, she will occasionally drive her son to school, shop for groceries with

12 assistance or, on rare occasion, visit her aunt who lives nearby.  *Id.* at 63, 65-66.  Plaintiff further

13 testified that she has lower back and neck pain, gets cramps in her hands that affect her ability to

14 grab or lift things, and has problems with her legs, which she must elevate sometimes to alleviate

15 swelling.  *Id.* at 67-69.  She further testified that she is depressed, has anxiety, experiences

16 hallucinations 3-4 times per week, and has heart palpitations.  *Id.* at 69-70.

17 The ALJ found that plaintiff's statements regarding the extent of her limitations were not

18 fully credible.  The ALJ provided several reasons for reaching this conclusion.  First, the ALJ

19 found that plaintiff's reported daily activities contradict the extent of the limitations she alleged.

20 *See Smolen*, 80 F.3d at 1284 (an ALJ may rely on inconsistent testimony in assessing a claimant's

21 credibility).  As previously discussed, plaintiff testified that she is capable of performing

22 housework, cooking, caring for her kids, and driving her son to school.  *Id*. at 64-67.  In a

23 Function Report, she stated that she prepares food twice a day, does dishes and dusts the house

24 for approximately 40 minutes a day, and is able to pay bills, count change, and use her

25 checkbook.  *Id.* at 225-226.  In addition, as noted above, throughout the treatment notes there are

26 indications of plaintiff taking care of a pregnant daughter, a daughter with an eye injured by a BB

27 gun, and a sick son, in addition to caring for a granddaughter.  *Id*. at 300, 304, 306, 307, 315, 494.

28 /////

13

1  However, in the Exertional Activities Questionnaire plaintiff reported on an average day she can
2  do "[n]othing, because [of] the pain . . . ." *Id*. at 196.

3  The ALJ also noted plaintiff failed to attend her therapy appointments. An ALJ is
4  permitted to consider an unexplained or inadequate explanation for failing to follow a prescribed
5  course of treatment in assessing a plaintiff's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112
6  (9th Cir. 2012); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that where a
7  claimant complains of disabling pain but fails to seek treatment, or fails to follow prescribed
8  treatment, an ALJ may use such failure as a basis for finding the complaint unjust or
9  exaggerated). In December 2010, plaintiff signed a treatment plan from San Joaquin County
10 Behavioral Health Services that recommended one-on-one therapy sessions with a clinician every
11 1-2 weeks for six months. AR 490. Plaintiff often failed to keep those appointments. *Id.* at 467,
12 474, 481, 484, 485, 486. On May 9, 2011, it was noted that plaintiff had only attended one-on-
13 one therapy once and had not attended any group therapy sessions since she signed her yearly
14 treatment plan. *Id.* at 467.

15 Plaintiff argues, however, that the ALJ failed to consider the reasons for why plaintiff
16 missed her appointments. Plaintiff states that "[f]or example, [plaintiff] missed a therapy
17 appointment at San Joaquin Mental Health Services because she had an appointment with a
18 neurosurgeon at the same time." ECF No. 15-1 at 30. Having another doctor's appointment on
19 the same day as therapy may account for missing one appointment. It does not explain missing
20 the other scheduled appointments, and plaintiff offers no such explanation. Accordingly, the
21 evidence of record supports the ALJ's reliance on an unexplained failure by plaintiff to follow a
22 prescribed course of treatment.

23 The ALJ further found that plaintiff's allegations were not credible because they were not
24 supported by objective medical evidence. While an ALJ may not rely solely on a lack of
25 objective medical evidence to support an adverse credibility finding, it is a relevant consideration
26 in assessing credibility. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169
27 F.3d at 595. In regards to plaintiff's lower back pain, plaintiff was observed by several
28 physicians to walk with a normal gait, sit comfortably through examinations, and get on and off

the examination table without assistance. AR 354, 361, 366. In addition, during the recent examination by Dr. Georgies, plaintiff's straight leg test was negative, she presented with normal muscle bulk and strength in her upper and lower extremities, and was able to perform a heel and tiptoe walk. *Id.* at 355-356. Although, plaintiff's range of motion was slightly decreased in her lumbar spine, Dr. Georgies determined this was due to her obesity.[3] *Id.* at 355. Further, an MRI of plaintiff's lumbar spine indicated only mild and moderate medical conditions. *Id.* at 440. The ALJ reasonably concluded that the minimal objective medical evidence did not support plaintiff's allegations of debilitating limitations.

Plaintiff argues that the ALJ should not have relied on Dr. Georgies' findings because the ALJ gave Dr. Georgies' opinion "minimal weight." ECF No. 15-1 at 30. Plaintiff, however, conflates the ALJ reliance on Dr. Georgies' objective findings and his rejection of Dr. Georgies' ultimate opinion. While the ALJ rejected Dr. Georgies' conclusion, he did not question Dr. Georgies' objective findings. Indeed, the ALJ found that Dr. Georgies' objective findings did not support the severe limitations assessed by Dr. Tanson. In the same vein, the ALJ found that the objective findings noted by Dr. Georgies also did not support plaintiff's allegations of debilitating limitations. Thus, there was no error in the ALJ relying on the objective findings of Dr. Georgies in assessing plaintiff's subjective complaints and credibility.

The ALJ further found that plaintiff's allegations were not credible because plaintiff reported and demonstrated consistent improvement in her depression with treatment. *Id.* at 38, 468, 470. As already discussed, medical records show that plaintiff experienced improvement in her psychological symptoms with medication. Indeed, medical records indicated that plaintiff seemed "in control of her depression" with medication. *Id.* at 300, 304, 305, 468, 485. The ALJ was permitted to find that plaintiff's allegations were not fully credible in light of evidence showing that plaintiff's mental impairments were managed with medication. *See Rodriguez v. Colvin*, No. CV 13-2630-JPR, 2014 U.S. Dist. LEXIS 73838, at *21 (C.D. Cal. May 29, 2014) ("Impairments that can be effectively treated with medication, even if they are not cured, are not

---

[3] This determination was corroborated in the treatment notes from Westlane Medical Clinic and by Dr. Talcherkar. *Id.* at 340, 366.

1  disabling for purpose of Social Security benefits."); *Wader v. Astrue*, No. 09-cv-01534-AJB
2  (JMA), 2011 U.S. Dist. LEXIS 113006, at *8 (S.D. Cal. Sept. 30, 2011) ("That medication is
3  effective in controlling a claimant's symptoms is a valid consideration in weighing the credibility
4  of a claimant's testimony that such symptoms are disabling").

5        Contrary to plaintiff's contention, the ALJ provided numerous clear and convincing
6  reasons for discrediting her subjective complaints, each supported by substantial evidence in the
7  record. Accordingly, the ALJ did not err in assessing plaintiff's credibility.

8        C. <u>The ALJ Properly Relied on the VE Testimony that Plaintiff Could Perform Past
9  Relevant Work.</u>

10        Plaintiff argues that the ALJ erred in relying on the VE's testimony in concluding that she
11  could perform her past relevant work. Specifically, plaintiff argues that the ALJ erred by: (1)
12  failing to rely upon the VE's testimony in response to a hypothetical that included limitations
13  assessed by her treating physicians; (2) relying on the VE's hypothetical that did not include the
14  moderate and fair limitations opined by Dr. Torrez; and (3) failing to include concentration limits
15  found by the ALJ. ECF No. 15-1 at 31-33.

16        Plaintiff's first argument is based on her contention that the ALJ's improperly rejected her
17  treating physicians opinions, as well as her testimony regarding the extent of her limitations. As
18  explained above, the ALJ did not err in rejecting this evidence. Accordingly, the ALJ was not
19  required to pose a hypothetical to the VE that included such limitations.

20        Plaintiff next argues that the ALJ's hypothetical posed to the VE failed to include Dr.
21  Torrez's opinion, which the ALJ accorded "great weight." ECF No. 15-1 at 32. Plaintiff argues
22  that despite Dr. Torrez's opinion that plaintiff had only a fair ability to complete a normal
23  workday and work week without interruptions at a constant pace, interact with coworkers, and
24  deal with various changes in the work setting, the ALJ failed to include these limitations in the
25  RFC and the hypothetical posed to the VE. *Id.* at 32.

26        Hypothetical questions posed to a VE must set out all the substantial, supported
27  limitations and restrictions of the particular claimant. *Magallanes*, 881 F.3d at 756. However,
28  "[a]n ALJ may synthesize and translate assessed limitations into an RFC assessment without

16

necessarily repeating each functional imitation verbatim in the RFC assessment." *Martin v. Astrue*, No. 2:12-cv-0033-KJN, 2013 U.S. Dist. LEXIS 19651, at *8 (E.D. Cal. Feb. 13, 2013) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).

The ALJ determined that plaintiff had the RFC to perform light work, but was limited to simple, repetitive tasks in a non-public setting. AR 43. Contrary to plaintiff's contention, this RFC properly included the limitations assessed by Dr. Torrez. Although Dr. Torrez opined that plaintiff's ability to perform some work-related functions was fair, she noted that "claimant's limitations, if any, appear to be primarily due to her reported medical problems," which included lower back pain and pain in both legs. AR 360, 363. She further stated that plaintiff's fair ability to complete a normal workday/workweek without interruptions at a constant pace and deal with various changes in the workplace is "influenced primarily by her reported medical condition[s]." *Id.* at 364. Significantly, she found that plaintiff's "symptom severity is considered to be within the mild range," plaintiff "does not appear to be suffering from a major mental disorder at this time," and that plaintiff "appears to be able to function adequately." *Id*. at 363. Further, Dr. Torrez opined that plaintiff had good ability to perform many other work-related functions, including being able to understand and remember very short, simple, or detailed instructions and maintaining concentration and attention. *Id.* at 363-364. None of these findings are inconsistent with the ALJ's RFC determination.

Moreover, plaintiff concedes that Dr. Torrez's opinion is consistent with the opinion of Dr. Polizos, *see* ECF No. 15-1 at 32, whose opinion also supports the ALJ's RFC determination. As plaintiff notes, Dr. Polizos opined that plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact with the general public; and respond appropriately to changes in the work setting. *Id.* at 385-386. However, Dr. Polizos also opined that even with these moderate limitations, plaintiff could understand, remember and execute simple instructions; maintain and sustain attention, concentration, persistence, and pace; respond, relate, and adapt to

1 changes at work; and perform simple and routine tasks. *Id*. at 387. The ALJ's finding that
2 plaintiff retains the RFC to perform light work, but is limited to simple repetitive tasks in a non-
3 public setting appropriately accounts for the opinions of Drs. Torrez and Polizos.

4 Lastly, plaintiff argues that the ALJ's RFC determination failed to incorporate his own
5 findings of moderate limitations in concentration, persistence, or pace. ECF No. 15-1 at 33.
6 Relying on this court's decision in *Smith v. Colvin*, No. 2:12-cv-1765-EFB, 2014 U.S. Dist.
7 LEXIS 44828 (E.D. Cal. Mar. 31, 2014), plaintiff argues that "[n]either *moderate* limitations nor
8 a *fair* ability . . . are automatically encompassed by a mere restriction to unskilled work . . . ."
9 ECF No. 23 at 10. In *Smith*, the ALJ found at step three that the plaintiff had moderate
10 difficulties in maintaining social functioning and concentration, persistence, or pace. *Smith*, 2014
11 U.S. Dist. LEXIS 44828 at *8. The ALJ's RFC determination, however, only limited the plaintiff
12 to work involving simple instructions, and did not include any limitations in maintaining
13 concentration, persistence, or pace. *Id.* at *12. As the ALJ failed to account for his own finding
14 that the plaintiff had moderate limitations in social functioning and maintaining concentration,
15 persistence, and pace, the case was remanded for further consideration of plaintiff's RFC. *Id*.

16 Unlike the ALJ in *Smith*, the ALJ here found that despite plaintiff's moderate difficulties
17 with concentration, persistence, or pace, she nevertheless "has the ability to sustain focused
18 attention and concentration sufficiently long enough to permit the timely and appropriate
19 completion of simple routine tasks." AR 36. As just explained, the finding that plaintiff could
20 perform simple repetitive tasks notwithstanding some moderate impairments in mental
21 functioning is supported by the medical evidence. Thus, the ALJ's RFC determination
22 adequately accounted for his finding that plaintiff had moderate impairments regarding
23 concentration, persistence, and pace. *See Phillips v. Colvin*, No. 13-cv-03533-WHO, 2014 U.S.
24 Dist. LEXIS 107627, at *32-33 (N.D. Cal. Aug. 5, 2014) (citing *Sabin v. Astrue*, 337 F. App'x
25 617, 621 (9th Cir. 2009) ("The ALJ determined the end result of [claimant's] moderate
26 difficulties as to concentration, persistence, or pace was that she could do simple repetitive tasks
27 on a consistent basis.")); *Murray v. Colvin*, No. C-13-01182-DMR, 2014 U.S. Dist. LEXIS
28 50586, at *31-35 (N.D. Cal. Apr. 10, 2014) (finding the ALJ did not err in assessing plaintiff's

1  RFC when the ALJ translated plaintiff's moderate limitations in concentration, persistence, or
2  pace into a limitation to 1-2 step instructions, as it was consistent with the medical evidence);
3  *Martin v. Astrue*, No. 2:12-cv-0033-KJN, 2013 U.S. Dist. LEXIS 19651, at *28 (E.D. Cal. Feb.
4  12, 2013) (citing *Stubbs-Danielson*, 539 F.3d at 1174) ("Moderate mental limitations are not
5  necessarily inconsistent with an RFC for simple repetitive tasks, as long as such an assessment is
6  generally consistent with the concrete restrictions identified in the medical evidence.").
7      Accordingly, the ALJ's reliance on the VE's testimony was proper.

IV. <u>CONCLUSION</u>

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 17, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE